## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

YOREL PRUITT,                         *

     Plaintiff                     *

     v.                            *           CIVIL NO. JKB-21-2615

RESURGENT CAPITAL SERVICES, LP,       *
*et al.*

     Defendants.                   *

   *     *     *     *     *     *     *     *     *     *     *     *

### MEMORANDUM

Plaintiff Yorel Pruitt filed a Complaint, on behalf of herself individually and on behalf of a putative class, against Defendants Resurgent Capital Services, LP ("Resurgent"), LVNV Funding, LLC ("LVNV")—both alleged debt collectors (collectively, "Entity Defendants")—and John Does 1–25 (the "John Doe Defendants"), alleging violations of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.* (Compl., ECF No. 1.) Defendants Resurgent and LVNV moved to dismiss Ms. Pruitt's Complaint, arguing that Ms. Pruitt lacks standing and that the Complaint fails to state a claim upon which relief can be granted under the FDCPA. (Mot. Dismiss, ECF No. 14.) Ms. Pruitt filed a Response in Opposition to the Motion to Dismiss, (Pl.'s Opp'n Mot. Dismiss, ECF No. 15), and Defendants Resurgent and LVNV filed a Reply in Support of their Motion. (Defs.' Reply Supp. Mot. Dismiss, ECF No. 16.) Entity Defendants' Motion to Dismiss is now ripe for consideration and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, the Court will GRANT Entity Defendants' Motion to Dismiss (ECF No. 14), and the Complaint will be dismissed without prejudice.

## I.    Background[1]

Ms. Pruitt received a letter from Resurgent dated July 29, 2021, regarding an alleged debt

owed to LVNV (the "Resurgent Letter" or the "Letter"), who purchased the debt from its original

obligee, Credit One Bank, N.A. (Compl. ¶¶ 23, 27, 29; *see* ECF No. 1-2.)[2]  In addition to a notice

in the top right-hand corner containing the account number, original creditor, current owner,

reference ID, balance, and accountholder name, the Resurgent Letter states the following:

> Resurgent Capital Services L.P. manages the above referenced account for LVNV
> Funding LLC and has initiated a review of the inquiry recently received either
> directly or from Tate & Kirlin, the current servicer of this account.  For further
> assistance, please contact one of our Customer Service Representatives toll-free at
> 1-866-464-1187.

(ECF No. 1-2.)  Below this message is a notice, in bold type, directing the recipient to "[p]lease

read the following important notices as they may affect [her] rights."  (*Id.*)  The notice contains

the following statutorily required language:

> Unless you notify us within 30 days after receiving this notice that you dispute the
> validity of this debt, or any portion of it, we will assume this debt is valid.  If you
> notify us in writing within 30 days after receiving this notice that you dispute the
> validity of this debt, or any portion of it, we will obtain verification of the debt or
> obtain a copy of a judgment and mail you a copy of such judgment or verification.
> If you request of us in writing, within 30 days after receiving this notice, we will
> provide you with the name and address of the original creditor, if different from the
> current creditor.  This is an attempt to collect a debt and any information obtained
> will be used for that purpose.  This communication is from a debt collector.

---

[1] At the motion to dismiss stage, the "well-pled allegations of the complaint" are accepted as true and "the facts and reasonable inferences derived therefrom" are construed "in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997) (citing *Little v. Fed. Bureau of Inv.*, 1 F.3d 255, 256 (4th Cir. 1993)).

[2] The Court's consideration of the Resurgent Letter (ECF No. 1-2) at this stage does not convert Entity Defendants' Motion to Dismiss into a motion for summary judgment because the Letter is "explicitly incorporated into the complaint by reference" and is "attached to the complaint as [an] exhibit[]." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

(*Id.*); *see also* 15 U.S.C. § 1692g(a) (describing the required contents of a written notice to be sent "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt").

Ms. Pruitt alleges that, read together, these paragraphs left her[3] "confused as to the proper procedures to dispute her debt." (Compl. ¶ 38.) Specifically, Ms. Pruitt argues that the Letter (1) misleads "the consumer because one paragraph leads h[er] to believe that [her] account is already under review and that [s]he does not need to dispute the debt and another paragraph says [s]he has thirty days to dispute the debt"; (2) implies in the first paragraph that "a phone call is sufficient" to dispute the debt when such must be done in writing; and (3) mentions Tate & Kirlin as "the current servicer" of the account without further explaining that entity's role relative to that of Resurgent and LVNV. (*Id.* ¶¶ 36, 37, 40–42.) Ms. Pruitt alleges that the resulting confusion made her "unable to evaluate her options of how to handle [the] debt"; caused her to expend "time, money, and effort" to determine the proper course of action; prevented her from "adequately respond[ing]" to the Letter;[4] misled her "to her detriment" and caused her to rely on the Letter's contents to her detriment; and that she "would have pursued a different course of action" but for the confusing nature of the Letter. (*Id.* ¶¶ 46, 47, 50, 52, 53.)

On behalf of herself and a putative class of similarly situated individuals, Ms. Pruitt filed a Complaint in this Court on October 12, 2021, alleging two counts in violation of the FCDPA. (Compl. at 1, ¶¶ 55–59, 60–64.) In Count I, Ms. Pruitt claims that Defendants made "a false and misleading representation" in violation of 15 U.S.C. § 1692e(10), which prohibits debt collectors

---

[3] Plaintiff's briefing uses both "she/her/hers" and "he/him/his" pronouns when referring to the Plaintiff. The Court assumes this was in error and will therefore use "she/her/hers" pronouns when referring to Plaintiff in this Memorandum, as the Complaint most consistently uses these pronouns.

[4] Strangely, Ms. Pruitt alleges both that the Letter "created an appreciable risk" that she would be unable to properly respond to the collection effort and that it actually did so. (Compl. ¶¶ 50, 51.)

from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" including "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." (*Id.* ¶¶ 55–59.) In Count II, Ms. Pruitt claims that the Letter's "contradictory language" relating to "the current status of the debt and method for a dispute" violated 15 U.S.C. § 1692g, which requires debt collectors to send a consumer a written notice containing certain statutorily enumerated details within five days of the initial communication with the consumer. (*Id.* ¶¶ 60–64.) She seeks actual damages, statutory damages, costs, attorneys' fees, and declaratory relief. (*Id.* ¶¶ 6, 59, 64.)

## II.   *Legal Standards*

### A.   *Rule 12(b)(1)*

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a claim on the argument that the presiding court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

Though Entity Defendants bring their Motion to Dismiss under Rule 12(b)(6) only, their standing argument challenges the Court's subject matter jurisdiction and is therefore properly considered under Rule 12(b)(1). *See Roy v. Ward Mfg., LLC*, Civ. No. RDB-13-3878, 2014 WL 4215614, at *1 (D. Md. Aug. 22, 2014) ("When a defendant moves to dismiss a plaintiff's claim for lack of standing, courts commonly address the motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure."); *see also Stone v. Trump*, 400 F. Supp. 3d 317, 333 (D. Md. 2019) ("Rule 12(b)(1) governs motions to dismiss . . . for lack of standing, which pertain to subject matter jurisdiction."). When considering a motion to dismiss challenging a plaintiff's standing to bring

suit in federal court, "the court determines whether the allegations in the Complaint, taken as true, are sufficient to establish standing under the plausibility standard of Rule 12(b)(6) and *Iqbal/Twombly*." *Allah-Mensah v. Law Office of Patrick M. Connelly, P.C.*, Civ. No. PX-16-1053, 2016 WL 6803775, at \*2 (D. Md. Nov. 17, 2016) (citing *Zander v. United States*, 786 F. Supp. 2d 880, 883 (D. Md. 2011)); *see also infra* Part II.B.

### *B. Rule 12(b)(6)*

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, "a plaintiff must plead enough factual allegations 'to state a claim to relief that is plausible on its face.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At this stage, the Court "accept[s] as true all of the factual allegations contained in the complaint," and "draw[s] all reasonable inferences in favor of the plaintiff." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011)). That said, "[b]are legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citing *Ashcroft*, 556 U.S. at 679).

### *III. Analysis*

In support of their Motion to Dismiss, Entity Defendants argue that Ms. Pruitt's claims fail for lack of standing and on the merits. (*See generally* Mot. Dismiss Mem. Supp.) In response, Ms. Pruitt raises several arguments in support of her Article III standing in addition to the substance of her FDCPA claims. (*See generally* Pl.'s Opp'n Mot. Dismiss.) Because the Court concludes that the Complaint does not allege facts sufficient to establish Ms. Pruitt's standing to

sue in federal court—depriving the Court of subject matter jurisdiction—it does not reach the merits of Ms. Pruitt's claims under the FDCPA.

### A. Standing

Under the Constitution, federal courts are empowered to resolve "Cases" and "Controversies[.]" U.S. Const. art. III, § 2, cl. 1. One consequence of this textual restriction is that a plaintiff seeking relief in federal court must demonstrate that she has standing to sue. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). To do so, it is the plaintiff's burden to show that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560–61; *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)); *see also Allen v. Wright*, 468 U.S. 737, 751 (1984) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."). "[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete *and* particularized.'" *Spokeo*, 578 U.S. at 334 (citing *Laidlaw*, 528 U.S. at 180–81) (emphasis in original).

#### 1. Concrete Injury

The controversy in this case centers around whether Ms. Pruitt suffered a concrete injury. (*See* Mot. Dismiss Mem. Supp. at 5; Pl.'s Opp'n Mot. Dismiss at 4–5.) To determine whether the concrete injury requirement is satisfied, courts look to both "historic practice and the judgment of Congress." *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 653 (4th Cir. 2019). First, "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC*

6

*v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (finding that dissemination of inaccurate OFAC alerts to third party entities bore sufficiently close resemblance to tort of defamation to support Article III standing of 1,853 class members).  "Courts must [also] afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation." *Id.* (citing *Spokeo*, 578 U.S. at 340–41).

To the extent that courts previously recognized a substantive right that Congress created in passing the FDCPA—"the violation of which would itself give rise to a concrete injury," *Guerro v. GC Servs. Ltd. Partnership*, Civ. No. 15-7449, 2017 WL 1133358, at *10 (E.D.N.Y. Mar. 23, 2017)—the Supreme Court appears to have foreclosed this approach in *TransUnion*.[5]  *See TransUnion*, 141 S. Ct. at 2205 ("[U]nder Article III, an injury in law is not an injury in fact."); *see also Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 921 (4th Cir. 2022) ("[P]laintiffs cannot establish a cognizable injury simply by pleading a statutory violation.").  Although "Congress may elevate harms that exist in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Id.* (internal citations and quotations omitted); *see also Kola v. Forster & Garbus LLP*, Civ. No. 19-10496, 2021 WL 4135153, at *7–*8 (S.D.N.Y. Sept. 10, 2021) ("Plaintiff's citation to pre-*TransUnion* cases and her attempts to distinguish the FCRA provisions at issue in *TransUnion* from the FDCPA

---

[5] At least one prior case that found standing based on an alleged FDCPA violation alone did so because "§ 1692e provides certain debtors a right to be free from false, deceptive, or misleading conduct or representations by debt collectors, precisely because such conduct or representations may cause harm or a material risk of harm." *Biber v. Pioneer Credit Recovery, Inc.*, 229 F. Supp. 3d 457, 465–66 (E.D. Va. 2017) (distinguishing FDCPA violations "from the innocuous, bare 'procedural violations'" of the FCRA that the Supreme Court encountered in *Spokeo*). *TransUnion* rejected the proposition that mere risk of future harm—without more—can support standing in a suit for damages. *See TransUnion*, 141 S. Ct. at 2210–12; *see also Ward v. Nat'l Patient Account Servs. Sols., Inc.*, 9 F.4th 357, 361 (6th Cir. 2021) (citing *TransUnion*, 141 S. Ct. at 2211) ("[P]laintiffs must demonstrate that the 'risk of future harm materialized,' or that the plaintiffs 'were independently harmed by their exposure to the risk itself.'").

provisions here are unavailing."). Accordingly, the Court concludes that it must determine whether Ms. Pruitt has established that she was harmed beyond the alleged statutory violation itself. *See TransUnion*, 141 S. Ct. at 2205 (citing *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 999 n.2 (11th Cir. 2020) (Katsas, J., sitting by designation)) ("'[W]e cannot treat an injury as 'concrete' for Article III purposes based only on Congress's say-so.'").

### 2. Analogy to Fraud and Negligent Misrepresentation

Ms. Pruitt argues that the injury she suffered as a result of receiving the Resurgent Letter is analogous to the common law torts of fraud and negligent misrepresentation. (Pl.'s Opp'n Mot. Dismiss at 12–15.) These torts both contain detrimental reliance as an element.[6] *See* Restatement (Third) of Torts: Liab. for Econ. Harm § 9 (2020) (fraud) ("One who fraudulently makes a material misrepresentation of fact, opinion, intention, or law, for the purpose of inducing another to act or refrain from acting, is subject to liability for economic loss caused by the other's justifiable reliance on the misrepresentation."); Restatement (Third) of Torts: Liab. for Econ. Harm § 5 (2020) (negligent misrepresentation) ("An actor who . . . supplies false information for the guidance of others is subject to liability for pecuniary loss caused to them by their reliance upon the information, if the actor fails to use reasonable care in obtaining or communicating it."). Though Ms. Pruitt argues that she need not establish detrimental reliance because *TransUnion* does not "require an exact·duplicate" of a common law tort, *TransUnion*, 141 S.Ct. at 2209, detrimental

---

[6] Detrimental reliance will not always be necessary to establish standing. For example, a violation of 15 U.S.C. § 1692c—which, *inter alia*, restricts whether and when a debt collector may communicate with a consumer who is represented by counsel or who has submitted written notice that she disputes the debt—most closely resembles the common law tort of intrusion upon seclusion, which does not contain a reliance element. *See Westerman v. Constar Fin. Servs., LLC*, Civ. No. JKB-21-2255, 2021 WL 4554334, at *2 (D. Md. Oct. 5, 2021) (finding that plaintiff—who alleged that he experienced emotional distress and incurred attorneys' fees when a debt collector continued collection efforts after plaintiff notified the obligee that an attorney represented him, all in violation of the FDCPA—had standing); *see also* Restatement (Second) of Torts § 652B (1977) (intrusion upon seclusion) ("One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.").

reliance is so central a feature of fraud and negligent misrepresentation that Ms. Pruitt must at least show that she relied on the Resurgent Letter to her detriment in some way. In other words, detrimental reliance is such an essential element of fraud and negligent misrepresentation that it must somehow be addressed in order to demonstrate a "close relationship" to the injury she suffered, *id.*, even if the element is not met to the same extent as would be required to plead a cause of action under those torts. She has not done so here.

In her Complaint, Ms. Pruitt alleges that: the confusion she experienced as a result of receiving the Resurgent Letter prevented her from "adequately respond[ing]" to the Letter; the Letter misled her "to her detriment" and that she relied on the Letter's contents to her detriment; and that she "would have pursued a different course of action" but for the confusing nature of the Letter. (Compl. ¶¶ 50, 52, 53.) She further alleges that the Letter prevented her from "evaluat[ing] her options of how to handle [the] debt" and caused her to expend "time, money, and effort" to determine the proper course of action. (*Id.* ¶¶ 46–47.) These allegations are pled at too high a level of generality to allow the Court to determine whether Ms. Pruitt has carried her burden to establish standing. *See Twombly*, 550 U.S. at 570 (requiring plaintiffs to plead "enough facts to state a claim to relief that is plausible on its face"). Though she alleges that the Letter misled her to her detriment and prevented her from providing an adequate response, Ms. Pruitt does not explain *how* the Letter did so. Nor does she explain what course of action she would have pursued had the Letter communicated her rights more clearly.[7] Because the Complaint fails to explain which options Ms. Pruitt was prevented from considering, how she "handled" her debt, and how

---

[7] Although Ms. Pruitt asserts in her Opposition that she "reasonably believed that the letter was simply a fraud designed to elicit payment on debt [s]he did not owe," (Pl.'s Opp'n Mot. Dismiss at 1–2), the Complaint merely alleges that she "would [have] be[en] easily misled to believe there [was] potential fraud in the letter." (Compl. ¶ 44.) "[S]tanding is established by the facts alleged in the complaint[,]" *Netro v. Greater Balt. Med. Ctr., Inc.*, 891 F.3d 522, 526 (4th Cir. 2018), and the Complaint does not allege that Ms. Pruitt would have contested the debt but for her confusion or that she *actually believed* the Letter was fraudulent.

she would have done so differently but for her confusion, it is unclear what she allegedly spent her time, money, and effort doing in response to the Letter.[8]  A plaintiff must allege facts that show why she has standing to sue in federal court, *Whitfield v. Contract Callers, Inc.*, Civ. No. RDB-21-1540, 2021 WL 5999265, at \*4 (D. Md. Dec. 20, 2021), and the Court cannot determine from the Complaint's conclusory allegations whether Ms. Pruitt's injury is sufficiently similar to fraud or negligent misrepresentation.

In some cases, independent injury arising as a result of an alleged FDCPA violation will be obvious—and will therefore require the Complaint to plead fewer details to demonstrate its plausibility. *See, e.g., Moore v. Blibaum & Assocs., P.A.*, 693 F. App'x 205, 206 (4th Cir. 2017) (standing found where complaint alleged that defendant "demand[ed] payment of an inflated sum based on an improper interest rate" in violation of 15 U.S.C. § 1692e(2)(A) and plaintiff consequently "'suffered and continues to suffer' from 'emotional distress, anger, and frustration'"); *Ben-Davies v. Blibaum & Assocs., P.A.*, 695 F. App'x 674, 676 (4th Cir. 2017) (same).  In contrast, it is not obvious to the Court why Ms. Pruitt's confusion—which alone is insufficient to confer standing, *see Ward*, 9 F.4th at 363; *Wolkenfeld v. Portfolio Recovery Assocs., LLC*, Civ. No. 22-1156, 2022 WL 1124828, at \*2 (E.D.N.Y. Apr. 14, 2022)—caused her injury because it is unclear what actions Ms. Pruitt did or did not take to "evaluate her options" about the alleged debt.[9]  The examples Ms. Pruitt cites in her Opposition in support of her argument that

---

[8] In her Opposition to Entity Defendants' Motion to Dismiss, Ms. Pruitt states that she wasted time by refusing to act on the Letter, "believing it would be futile to request the original creditor's name." (Pl.'s Opp'n Mot. Dismiss at 20.) Even if the Court could consider this allegation—which is not in the Complaint—it is not clear why receiving a confusing letter would cause Ms. Pruitt to believe contacting Resurgent to ask for information about the original creditor would be futile. (*See, e.g.*, ECF No. 1-2 (showing that the Letter contained Resurgent's address, toll free phone and fax numbers, online customer portal, and hours of operation).)  As is the case with several of Ms. Pruitt's concrete injury theories, the Court concludes that the Complaint contains insufficient facts to show why this alleged injury is plausible.

[9] In her Opposition to Entity Defendants' Motion to Dismiss, Ms. Pruitt alleges, for the first time, that she "took no further action on the debt" as a result of her confusion—an allegation that contradicts the Complaint, which alleges that Ms. Pruitt "expended time, money, and effort in determining the proper course of action." (*Compare* Pl.'s Opp'n

10

wasted time constitutes a concrete injury show precisely why more information is needed here: each of those cases describes specific allegations detailing what those plaintiffs wasted their time doing. *See, e.g., Wendell H. Stone Co. v. Chesapeake Plywood, LLC*, Civ. No. MJG-16-2821, 2017 WL 1550242, at *1 n.3 (D. Md. May 1, 2017) (internal quotations omitted) (standing likely where defendant's actions caused (1) plaintiff's employees to waste time "receiving, reviewing, and routing the [d]efendant's unauthorized faxes" and (2) plaintiff to lose paper and toner).

### 3. *Alternative Theories of Concrete Harm*

To the extent that Ms. Pruitt argues that she has suffered a concrete "informational injury" as recognized in *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998), and *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440 (1989), *TransUnion* also appears to bar this theory. The Complaint lacks mention of specific consequences resulting from Ms. Pruitt's asserted informational injury. As with the *TransUnion* plaintiffs seeking to recover on FCRA disclosure and summary-of-rights claims, Ms. Pruitt has "identified no 'downstream consequences' from failing to receive the required information." *TransUnion*, 141 S. Ct. at 2214 (citing *Trichell*, 964 F.3d at 1004). "An asserted informational injury that causes no adverse effects cannot satisfy Article III," and because Ms. Pruitt has identified none that are legally cognizable, the Court cannot conclude that Ms. Pruitt has established a concrete injury on this basis. *Id.* (internal quotations and citation omitted).

Entity Defendants argue that the alleged FDCPA violations at issue here merely caused Ms. Pruitt to receive the statutorily required information "in the wrong format," but did not wholly prevent her from receiving the required information—and that *TransUnion* therefore prevents the

---

Mot. Dismiss at 1, 2, 20–21, *with* Compl. ¶ 47.) While it is certainly possible that inaction resulting from her confusion could have caused her injury, Ms. Pruitt has not alleged sufficient facts to show the Court why injury arising from these circumstances is *plausible. See Whitfield*, 2021 WL 5999265, at *4 ("[I]t is not plausible on its face that deciding to do nothing in response to a confusing letter caused Plaintiff to expend time and money and caused her emotional harm.").

Court from finding that she suffered a concrete informational injury. *TransUnion*, 141 S. Ct. at 2214 (emphasis omitted); (*see* Defs.' Reply Supp. Mot. Dismiss at 4–5.) However, assuming the truth of Ms. Pruitt's allegations, it is possible that the contradictory language contained in the Letter could have interfered with her ability to receive and understand the information to which she was legally entitled under 15 U.S.C. § 1692g. As already explained, Ms. Pruitt has not pled enough facts to show the Court that this plausibly occurred; but this possibility prevents the Court from concluding that Ms. Pruitt's allegations boil down to a mere formatting grievance. Rather, it is the absence of alleged downstream consequences that precludes the Court from finding that Ms. Pruitt suffered a concrete informational injury.

Ms. Pruitt also asserts that a pre-*TransUnion*, post-*Spokeo* Fourth Circuit case compels the Court to find that she has suffered an intangible injury sufficient to confer standing. *See Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234 (4th Cir. 2019). There, the Fourth Circuit determined that the plaintiff alleged a concrete injury where he pled a "substantive violation of the rights conferred by" the Electronic Funds Transfer Act (EFTA). *Curtis*, 915 F.3d at 241. The plaintiff alleged that the defendant entered into a tax payment agreement with him that violated his right "to enter into a credit agreement without being required to agree to preauthorized" electronic fund transfers—a right protected by the EFTA. *Id.* The Court concludes that *Curtis* does not govern both because it was decided before *TransUnion*'s emphasis on the traditional, common-law harm analysis and because it deals with a different statute—and as a result, a different injury—than the case at hand. Further, the Complaint still fails to show that the Letter caused Ms. Pruitt "'the type of harm Congress sought to prevent' when it enacted" the FDCPA. *Curtis*, 915 F.3d at 240–41 (citing *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345–46 (4th Cir. 2017)). "Congress, in the FDCPA, created a right to accurate debt-related information and non-abusive

12

collection practices, and . . . a debt collector's false, misleading, deceptive, or abusive conduct concretely harms a debtor by *detrimentally affecting* that debtor's decisions regarding his debt." *Biber*, 229 F. Supp. 3d at 465 (emphasis added). Just as Ms. Pruitt has failed to show a concrete injury similar to that traditionally recognized by American courts, she has failed to show how she was affected to her detriment as a result of the alleged invasion of her statutorily protected rights.

It is true that an injury need not exactly mirror a common law cause of action in order to be redressable in federal court. *TransUnion*, 141 S. Ct. at 2209. It is also true that what is required to demonstrate standing will vary across different cases and injuries. *Compare id.* at 2208–09 (holding that 1,853 class members bringing FCRA claims had standing where their injury bore a sufficiently close relationship to the tort of defamation), *and Fernandez v. RentGrow, Inc.*, --- F.R.D. ---, 2022 WL 872507, at *5–*7 (D. Md. Mar. 10, 2022) (holding that named plaintiff had standing where his injury resulting from an alleged FCRA violation bore a sufficiently close relationship to the tort of defamation, which does not contain a reliance element), *with Wolkenfeld*, 2022 WL 1124828, at *2–*4 (remanding to state court FDCPA claim for lack of standing where the complaint failed to show any detrimental reliance). The Complaint in this case contains many allegations that are either speculative or conclusory. (*See, e.g.*, Compl. ¶ 44 ("Plaintiff *would be* easily misled to believe there is potential fraud in the letter.") (emphasis added), ¶ 52 ("Plaintiff was confused and misled to her detriment by the statements in the [Letter], and relied on the contents of the letter to her detriment.").) It also is "devoid of the specific factual allegations" that would allow the Court to determine whether Ms. Pruitt in fact relied on the letter to her detriment. *Wolkenfeld*, 2022 WL 1124828, at *3. The Court therefore does not have enough information to determine whether Ms. Pruitt has Article III standing and must dismiss her Complaint for lack of

13

subject matter jurisdiction. *See Spokeo*, 578 U.S. at 338 ("The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the[ elements of standing].").[10]

## IV.    *Conclusion*

A "'dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits.'" *Ali v. Hogan*, 26 F.4th 587, 600 (4th Cir. 2022) (citing *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.2d 175, 185 (4th Cir. 2013)). Accordingly, Entity Defendants' Motion to Dismiss is GRANTED and the Complaint will be dismissed without prejudice.

DATED this ⁊ day of July, 2022.

BY THE COURT:

James K. Bredar
Chief Judge

---

[10] The Complaint also names John Does 1–25 as "fictitious names of individuals and businesses alleged for the purpose of substituting names of Defendants whose identities will be disclosed in discovery and should be made parties to this action." (Compl. ¶ 12.) Because Ms. Pruitt's failure to demonstrate Article III standing deprives the Court of subject matter jurisdiction over this case, the Complaint will be dismissed without prejudice as against all Defendants—including John Does 1–25.